IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


EULAS LINWOOD HUGHES                                                    PLAINTIFF

v.                                     Civil No. 5:18-CV-05090

NURSE FRAN INFANTE, NURSE                                              DEFENDANTS
SHAWNA STEPHENS, DR. SAEZ, and
NURSE HEATHER TRIMMER


## OPINION AND ORDER

Plaintiff proceeds in this matter *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' Motion for Summary Judgment. (ECF Nos. 29, 30, 31.).

## I. BACKGROUND

In his Amended Complaint, Plaintiff alleges his federal constitutional rights have been

violated by the denial of medical care while incarcerated at the Benton County Detention Center

(BCDC) as a pretrial detainee. (ECF No. 11 at 4-5). He alleges he was shot four times in the back

on January 20, 2018. (*Id*. at 3-4). Plaintiff alleges bullets remain lodged in both his neck and

rotator cuff, but the areas were x-rayed and he was told nothing could be done.[1] (*Id*. at 5). Plaintiff

identifies Dr. Saez as the physician at the BCDC. Starting January 23, 2018, Plaintiff alleges Dr.

Saez could have given him pain medication for his injuries, but instead did not permit him to have

any pain medication "at all." (*Id*. at 4).

Plaintiff proceeds against all Defendants in their official and personal capacity. (*Id*. at 4).

He seeks compensatory and punitive damages. (*Id*. at 7).

---

[1] It is not clear from Plaintiff's Complaint if this determination was made by medical staff in the BCDC or
elsewhere.

Defendants filed their Motion for Summary Judgment on December 12, 2018. (ECF Nos. 29, 30, 31). On December 13, 2018, the Court entered an Order directing Plaintiff to file a Response to the Summary Judgment Motion. (ECF No. 32). Plaintiff filed his Response on January 25, 2019. (ECF No. 35).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

Defendants argue summary judgment in their favor is appropriate because: (1) Defendants were not deliberately indifferent to Plaintiff's serious medical needs; (2) no policy or custom of Southern Health Partners, Inc. caused Plaintiff to suffer any unconstitutional harm; (3) Plaintiff cannot "meet proof with proof" to establish the existence of a genuine issue of material fact. (ECF No. 31).

Plaintiff provided a one-paragraph Response, stating as follows: "They say my injurys [sic] are chronic but I'm not being treated as so. My pain is terriable [sic] everyday and they could make this at least more bearable. My pain and suffering make my life not as worth living. The quality of my life is pain every day." (ECF No. 35 at 1) (errors in original).

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.*

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

There is no dispute that Plaintiff's injuries meet the objective first prong of the deliberate indifference standard. He was involved in an alleged altercation with police on January 20, 2018. During this incident, he was shot four times. (ECF No. 30 at 1). Upon admission to Washington Regional Medical Center on January 20, 2017, he presented with gunshot wounds in his left chest cavity, left side of his back, right side of his chest, an open fracture of the right scapula, various soft tissue injuries, and several systemic issues. (ECF No. 31-1 at 3). Bullet fragments were noted to be present at the "at the lateral mass of the cervical spine" with "no fracture or injury to the

spine." Plaintiff was held overnight for observation and then released into police custody.[2] (ECF No. 31-1 at 2).

Plaintiff fails, however, to meet the subjective second prong of the deliberate indifference standard. His allegations that he received no pain medication "at all" are blatantly contradicted by the record. Upon discharge from the hospital on January 22, 2018, Plaintiff was prescribed 15 doses (30 tablets) of Tramadol, an opioid pain medicine. (ECF No. 30 at 1; 31-1 at 5). He was booked into BCDC that day and saw Defendant Saez on January 23, 2018. (ECF No. 31-1 at 7-8). Defendant Saez prescribed Tramadol twice a day, and on January 24, 2018, added 500 milligrams of Tylenol for additional pain control. (ECF No. 30 at 2; 31-1 at 8). On January 29, 2018, an injury on his flank exhibited odor, increased drainage, and increased pain. He was taken to Washington Regional Medical Center that same day, where he was diagnosed with an infection in one of his gunshot wounds. (ECF No. 30 at 2; 31-1 at 8, 13, 14-18). Upon discharge, he was prescribed Bactrim (antibiotic) and Flexeril (muscle relaxant). The muscle relaxant was prescribed to reduce muscle spasms, which contribute to pain. (ECF No. 30 at 2; 31-1 at 19; 31-2 at 2). Plaintiff was started on these additional drugs at BCDC on January 30, 2018. (ECF No. 30 at 2; 31-1 at 20). During that medical encounter, he told the provider he had a history of alcohol and prescription drug abuse. (ECF No. 30 at 3; 31-1 at 22). Plaintiff continued to receive Tramadol through February 2, 2018. (ECF No. 30 at 3; 31-2 at 2).

Starting on February 5, 2018, Plaintiff received gabapentin, a medication for nerve pain, instead of the opioid Tramadol. Given Plaintiff's reported history of prescription drug abuse, Defendant Saez did not believe it was medically prudent to continue Plaintiff on opioids after that time. (ECF No. 30 at 3; 31-2 at 2). On February 6, 2018, Plaintiff was also started on Naproxen,

---

[2] Based on the fact that Plaintiff was not scheduled for surgery, the Court will assume that it was the medical providers at Washington Regional who determined that surgery was not appropriate to remove the bullet fragments.

another pain medication. (*Id*.). From February 2018 through the date he filed his Complaint in May 2018, Plaintiff continued to receive non-steroidal anti-inflammatory drugs and gabapentin for pain, with several increases to the dosages in response to Plaintiff's requests. (ECF No. 30 at 3-4; 31-1 at 24-43; 31-2 at 2-3). Plaintiff's wounds were noted to be healed by Defendant Saez on March 23, 2018. (ECF No. 31-2 at 2). Plaintiff received a CT scan of his shoulder on March 6, 2017, and no fractures or dislocations were seen. (ECF No. 30 at 4; 31-2 at 2). On June 8, 2017, a CT scan of his neck indicated no spinal cord injury and no migration of the bullet fragment. (ECF No. 30 at 4; 31-2 at 3).

Thus, the record indicates Plaintiff has received regular medical care, including an immediate transport to Washington Regional Medical Center when one of his wounds became infected. The bullet fragments in his neck are also monitored by CT scan on a regular basis to ensure they have not migrated. Finally, the record indicates he has regularly received multiple pain medications, and the dosages for those pain medications have been increased several times upon his request. Plaintiff has provided no evidence to contradict the record. In particular, Plaintiff has not provided any evidence that he should be receiving something other than the multiple pain medications he is already prescribed or that surgery or other treatments to address the bullet fragments have been recommended. While the Court is not unsympathetic to his allegations of chronic pain, nothing in the record indicates the existence of any deliberate indifference by Defendants to that pain. Plaintiff's mere disagreement with the medical care provided does not rise to the level of a constitutional violation. See *Nelson,* 603 F.3d at 449 ("[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.") (internal citation omitted)).

In the absence of any evidence of deliberate indifference to Plaintiff's pain, his official capacity claim against Defendants necessarily fails. "To establish liability in an official-capacity suit under section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom . . .or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner." *Nix v. Norman,* 879 F.2d 429, 433 (8th Cir. 1989). Plaintiff did not allege that Southern Health Partners, Inc. or BCDC had a policy or custom of denying medical care or pain medication to inmates, and the summary judgment record provided no evidence that any such policy or custom existed.

Accordingly, there is no question of material fact remaining, and Defendants are entitled to summary judgment as a matter of law.

## IV. CONCLUSION

For these reasons, IT IS ORDERED that Defendants' Motion for Summary Judgment (ECF No. 29) is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this 9th day of July 2019.

Judgment will be entered accordingly.

/s/ P. K. Holmes, III

P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE